UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANASTACIA RAMIREZ,<br><br>    Plaintiff,<br><br>v.<br><br><br>LITTLE CAESARS ENTERPRISES, INC, et al.,<br><br>    Defendants. | Case No. 2:18-cv-07993-AB-JPR<br><br>**ORDER DENYING MOTION TO REMAND, GRANTING MOTION TO DISMISS INDIVIDUAL DEFENDANTS RUBY RODRIGUEZ AND AMANDA KIRKPATRICK, AND DENYING MOTIONS TO QUASH FOR INSUFFICIENT SERVICE OF SUMMONS ON RUBY RODRIGUEZ AND AMANDA KIRKPATRICK** |

## I.    INTRODUCTION

Before the Court is (1) Plaintiff Anastacia Ramirez's ("Plaintiff") Motion to Remand this case to state court and Request for Reimbursement of Costs and Fees in the Amount of $20,250.00 (Dkt. No. 34 (hereinafter, "Mot. to Remand")); (2) Defendant Little Caesars Enterprises Inc.'s ("Little Caesars") Motion to Quash for Insufficient Service of Summons on Individual Defendant Amanda Kirkpatrick (Dkt. No. 16); (3) Little Caesars's Motion to Quash for Insufficient Service of Summons on Individual Defendant Ruby Rodriguez (Dkt. No. 17); and (4) Little Caesars's Motion to Dismiss Individual Defendants Ruby Rodriguez and Amanda Kirkpatrick (Dkt. No. 18). All motions are opposed.  (Dkt. Nos. 23-24, 35.)  The Court heard argument on the motions on October 26, 2018 and took the matter under submission.  Having

1.

carefully reviewed the parties' submissions and considered the arguments presented during oral argument, and for the reasons indicated below, the Court **DENIES** Plaintiff's Motion to Remand, **GRANTS** Little Caesars's Motion to Dismiss, and **DENIES** Little Caesars's Motions to Quash as moot.

## II.    BACKGROUND

### A.    Factual Background

This lawsuit involves an employment dispute arising from Defendant Little Caesars's alleged wrongful termination of Plaintiff.  (*See* Dkt. No. 1 (hereinafter, "Removal"), Ex. A (hereinafter, "Compl.").)

Plaintiff is, and at all relevant times was, a California resident.  (Compl. ¶ 15.) Little Caesars is, and at all relevant times was, incorporated in Michigan and has its principal place of business in Michigan.  (*See* Removal at 10.) Amanda Kirkpatrick and Ruby Rodriguez (collectively, "the Individual Defendants") are, and at all relevant times were, California residents.  (Compl. ¶ 16.)

Plaintiff, a fifty-six-year-old Hispanic woman, began working for Little Caesars in April 2006.  (Compl. ¶¶ 1-2.)  Plaintiff alleges that Individual Defendant Kirkpatrick became a store manager for Little Caesars in 2016 and began mistreating Plaintiff shortly thereafter.  (Compl. ¶¶ 3-4, 10.)  Plaintiff further alleges that Kirkpatrick conspired with assistant manager and Individual Defendant Rodriguez "to fabricate a reason to terminate Plaintiff's employment."  (Compl. ¶ 10.) According to Plaintiff, Little Caesars terminated Plaintiff's employment on June 2, 2016 after a series of work-related conflicts.  (Compl. ¶ 13.)

### B.    Procedural History

Plaintiff initiated this action on May 24, 2018, in the Los Angeles Superior Court against Little Caesars and the Individual Defendants.  (*See generally* Compl.) Plaintiff alleges the following thirteen causes of action: (1) breach of express and implied contract; (2) breach of the covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) discrimination in violation of

Article I, Sections 1 and 8 of the California Constitution; (5) violation of California Government Code section 12900; (6) intentional infliction of emotional distress ("IIED"); (7) negligent management; (8) failure to conduct disability evaluation and provide accommodation, leave, and equal pay in violation of Business & Professions Code section 17200; (9) fraud, negligent misrepresentation, and concealment; (10) failure to provide timely accurate pay, safe sanitary workplace, and accurate personnel and pay records; (11) violations of California Labor Code sections 221, 224, and 1102.5(b) and (d); (12) failure to provide equal pay in violation of California Labor Code section 1197; (13) failure to provide or pay for rest breaks, meal periods, and overtime. (Compl. ¶¶ 1, 24-126.) Of these thirteen causes of action, only causes of action four through nine are against the Individual Defendants. (*See* Compl. ¶¶ 46-101.)

On August 9, 2018, Plaintiff indicates that she served the Individual Defendants with the Complaint. On August 15, 2018, Plaintiff served the Summons and Complaint on Little Caesars. On September 12, 2018, Defendant removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Shortly thereafter, Plaintiff moved to remand this case and Little Caesars moved to quash for insufficient service on the Individual Defendants and to dismiss the Individual Defendants. (Dkt. Nos. 16-18, 34.)

### III. LEGAL STANDARD

#### A. Removal

Under 28 U.S.C. § 1441(a), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332, a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68

3.

(1996).  Section 1441 limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(a)(b)(2). Section 1446(b) governs the timeliness of removals.  If the case stated by the initial pleading is "removable on its face," then a defendant has thirty days from receipt of the pleading to remove the case. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 884-85 (9th Cir. 2010).

 Removal statutes are "strictly construe[d] against removal."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.  *Id*.  Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court.  *Id*.

## B.    Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  The term "fraudulent joinder" is a term of art and does not connote any intent to deceive on the part of plaintiffs or their counsel.  *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983).  The relevant inquiry is whether plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is obvious under settled state law.  *Morris*, 236 F.3d at 1067; *McCabe*, 811 F.2d at 1339.

The burden of proving fraudulent joinder is a heavy one.  The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant."  *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to

amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand.").

## IV. DISCUSSION

Plaintiff, who is domiciled in California, provides three principal arguments as to why the Court should remand this case: (1) removal was untimely; (2) Little Caesars has failed to establish that the amount in controversy in this case exceeds $75,000; and (3) the Individual Defendants destroy complete diversity and are not "sham" defendants. As explained below, the Court finds Little Caesars timely removed this case to federal court, the Individual Defendants are sham defendants; thus, complete diversity is not destroyed, and the Court has subject matter jurisdiction. The Court also finds that the Individual Defendants have not been properly served.[1]

### A. Removal Was Timely

Plaintiff argues that remand is warranted because removal was untimely. Specifically, Plaintiff argues that the thirty-day clock started to run on August 9, 2018 when Plaintiff allegedly served the Individual Defendants with the Complaint, rather than August 15, 2018 when Plaintiff served Little Caesars with the Complaint. (Mot. to Remand at 4.) In its opposition, Little Caesars argues formal service of the summons and complaint—not "receipt"—is what triggers the thirty-day time limit. (*See* Dkt. No. 35 at 20.)

"The U.S. Supreme Court has determined that formal service is necessary to trigger the 30-day time-limit." *Gonzalez v. Lightcap*, No. LA18CV01236VAPSHKX,

---

[1] Plaintiff also argues the Notice of Removal is defective because Little Caesars failed to file all state court pleadings in this action and the Individual Defendants failed to join in removal. (*See* Dkt. No. 15.) The Court will address Plaintiff's additional arguments in the course of addressing the three principal arguments.

2018 WL 3753019, at *2-3 (C.D. Cal. Aug. 7, 2018) (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999)); *see also Coleman v. Labor & Indus. Review Comm'n of Wis.*, 860 F.3d 461, 472 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 739 (2018) ("[S]omething as important as the choice between a state court and a federal court . . . cannot be resolved against a party without bringing the party into the case through formal service of process."); *Zahn v. T.B. Penick & Sons, Inc.*, No. 11CV1322 AJB, 2011 WL 5118751, at *2 (S.D. Cal. Oct. 27, 2011) ("[I]t is not enough for Plaintiff to show that Defendant actually received a copy of the complaint by a particular date. Plaintiff must demonstrate compliance with the requirements of service."). When the grounds for removal is apparent on the face of the complaint, as it is here, there are four possibilities for when the thirty-day clock starts to run:

> First, if the summons and complaint are served together, the 30-day period for removal runs at once. Second, if the defendant is served with the summons but the complaint is furnished to the defendant sometime after, the period for removal runs from the defendant's receipt of the complaint. Third, if the defendant is served with the summons and the complaint is filed in court, but under local rules, service of the complaint is not required, the removal period runs from the date the complaint is made available through filing. Finally, if the complaint is filed in court prior to any service, the removal period runs from the service of the summons.

*Murphy Bros.*, 526 U.S. at 354.

Plaintiff has the burden to show service of the summons and complaint was effective. *Gonzalez*, 2018 WL 3753019, at *2-3; *see Zahn*, 2011 WL 5118751, at *2; *Roylance v. ADT Sec. Servs., Inc.*, No. C 08-1101 JF (RS), 2008 WL 2444795, at *2 (N.D. Cal. June 16, 2008). Plaintiff previously lodged the proofs of service of the summons and complaint on the Individual Defendants dated August 9, 2018. (Dkt. No. 15.) With respect to timeliness, Plaintiff contends that "[t]hese proofs of service establish that Defendant was aware of this action . . . when the Summons and Complaint was served on it's [sic] employees at it's [sic] Corona location on August 9, 2018." (*Id.*) Plaintiff further alleges that "Defendant has withheld these pleadings

6.

because they establish that the notice of removal filed September 12, 2018 is untimely." (*Id.* at 2.) Thus, Plaintiff's theory is that Little Caesars was effectively "served" with the complaint on August 9—the date that the Individual Defendants were allegedly served—because Little Caesars knew about the complaint against it.

To determine that the date of service was the date Plaintiff allegedly served the Individual Defendants would conflict with the central holding of *Murphy Bros.*, 526 U.S. 344, which held that formal process was necessary to establish the thirty-day removal deadline. In *Murphy Bros.*, the plaintiff filed a complaint in state court and faxed a courtesy copy of the file-stamped complaint to the vice president of the defendant company two weeks before officially serving the defendant by certified mail. *Id.* at 348.

Defendant filed the notice of removal thirty days after service, but forty-four days after receipt of the faxed copy of the complaint. *Id.* The Court noted that "nothing in the legislative history . . . so much as hints that Congress . . . intended to dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant." *Id.* at 352-53. The Court held "mere receipt of the complaint unattended by any formal service" does not trigger the thirty-day time limit. *Id.* at 347-48.

Accordingly, the Court finds that service was effective on Little Caesars on August 15, 2018—the date Little Caesars was formally served with the summons and complaint. Little Caesars filed its notice of removal on September 12, 2018, less than thirty days after service was effective. Thus, removal was timely.[2]

---

[2] The Court declines to take judicial notice of the court's order to show cause in *Sean P. Harper v. Little Caesar Enterprises, Inc.* Case No. 18-01564 that is attached to Plaintiff's counsel's declaration as exhibit B. (Dkt. No. 34-1 at 2-3.) That case is neither related to this case nor relevant to the issues before the Court.

## B. The Individual Defendants Are Sham Defendants[3]

Little Caesars bears the burden of demonstrating that the Individual Defendants, who are both California citizens and would destroy diversity, are sham defendants.[4] *See Gaus*, 980 F.2d at 566 (noting that a defendant has the burden of establishing that removal is proper). To support a claim that a non-diverse defendant has been fraudulently joined, the removing party must show that the plaintiff has failed to state

---

[3] At the hearing on October 26, 2018, Plaintiffs' counsel requested the Court consider supplemental briefing on whether the Individual Defendants are sham defendants. Plaintiff argued that she had no notice that Little Caesars would argue the Individual Defendants were sham defendants until Little Caesars filed its opposition to the Motion to Remand, which was filed on October 19, 2018 pursuant to a condensed briefing schedule. (*See* Dkt. No. 35.) Plaintiff further argued that ruling on the merits without considering supplemental briefing on the issue, violates Plaintiff's right to due process because Plaintiff did not have sufficient time to address the sham defendant argument in the reply brief. The Court disagrees. Plaintiff was on notice of the sham defendant issue on September 19, 2018, when Little Caesars's filed its Notice of Removal. The Notice of Removal specifically states: "Because they are sham defendants, the court must disregard the citizenship of Ms. Ruby Rodriguez and Ms. Amanda Kirkpatrick, for purposes of diversity. Plaintiff asserts six claims against Ms. Rodriguez and Ms. Kirkpatrick, all of which fail. They are not supported by sufficient facts, not supported as a matter of law, and are precluded by California's Workers' Compensation Act." (Dkt. No. 1 at 5.) Plaintiff was also on notice after reviewing Little Caesars's opposition to Plaintiff's Ex Parte Application to Remand, which was filed on October 15, 2018. (*See* Dkt. No. 32.) Plaintiff cannot use notice as both a shield and a sword.

[4] Little Caesars's memorandom of points and authorities in support of its motion to dismiss the Individual Defendants thoroughly addresses the merits of all causes of action against the Individual Defendants. (*See* Dkt. No. 25-1 (hereinafter, "Rivera Decl.").) Plaintiff focuses primarily on technical deficiencies to challenge removal and does not address in detail the merits of her claims against the Individual Defendants. For example, Plaintiff points out that Little Caesars filed the Notice of Motion to Dismiss on September 19, 2018 and failed to attach the corresponding memorandum of points and authorities. (Dkt. No. 31 at 1-2.) On October 10, 2018, Little Caesars filed a Notice of Errata, attaching the memorandum of points and authorities and explaining it inadvertently forgot to attach the supporting papers. (Rivera Decl. ¶¶ 3-5.) Shortly thereafter, Plaintiff filed a supplemental opposition characterizing this error as a "bad faith tactic" and requesting that the Court strike the Notice of Errata and memorandom of points and authorities pursuant to Local Rule 7-5. (Dkt. No. 31 at 1-2.) The Court declines to do so. *See* C.D. Cal. L.R. 7-4 ("The Court *may* decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8") (emphasis added).

a valid cause of action against that non-diverse defendant, and the "settled rules of the state" must make the failure evident by clear and convincing evidence. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (internal quotation marks omitted). When determining whether this burden has been met, courts may look to the face of the plaintiff's complaint as well as to additional "summary judgment type evidence." *Morris*, 236 F.3d at 1068.

### 1. Claim Based on Violations of Article I, Sections 1 and 8 of the California Constitution (Fourth Cause of Action)

Plaintiff claims that the Individual Defendants violated her right to privacy under Article I, Sections 1 and 8 of the California Constitution for discrimination and/or retaliation.[5]

Article I, section 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." The California Constitution creates a privacy right that protects individuals from the invasion of their privacy not only by state actors but also by private parties. *Am. Acad. of Pediatrics v. Lungren,* 16 Cal. 4th 307 (1997); *Leonel v. Am. Airlines, Inc.,* 400 F.3d 702, 711-12 (9th Cir. 2005), *opinion amended on denial of reh'g,* 03-15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005). To prove a claim under the California Constitutional right to privacy, a plaintiff must first demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 35-37 (1994). "These elements do not constitute a categorical test, but rather serve as threshold components of a valid claim to be used to 'weed out claims that involve so insignificant or de minimis an intrusion on a

---

[5] Plaintiff provides few factual allegations to support this cause of action. (*See* Compl. ¶¶ 46-47.)

constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.'" *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Loder v. City of Glendale,* 14 Cal. 4th 846 (1997)).

Assuming, without deciding, that Plaintiff has established elements one and two, Plaintiff's claim fails under element three because the Individual Defendants' conduct is not "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 26, 37. Plaintiff alleges that, "as a woman whistleblower, they interfered with her rights to pursue her profession, vocation, and employment." (Compl. ¶ 46.) Plaintiff has plead no facts in the entire complaint, that "amounts to a serious invasion" of the protected privacy interest.

Article I, section 8 provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Plaintiff has alleged no facts suggesting the Individual Defendants terminated her employment for any of the enumerated reasons.

After considering and accepting as true the allegations in the complaint and briefing, as well as the allegations presented at the hearing, the Court finds Plaintiff's constitution-based claims fail and that Plaintiff cannot possibly cure the deficiencies by amending the complaint.

## 2. Harassment Claims (Fifth Cause of Action)

Plaintiff claims that the Individual Defendants harassed her for "taking medical leave . . . by refusing her evaluation and accommodation" in violation of FEHA. (Compl. ¶ 51.) FEHA makes it unlawful for an "an employer . . . or any other person," to harass an employee because of age, disability, or medical condition. Cal. Gov. Code § 12940(j)(1). Under FEHA, "harassment" includes: (a) [v]erbal harassment, e.g. epithets, derogatory comments or slurs on a basis enumerated in the Act; (b) physical harassment, e.g. assault, impeding or blocking movement, or any

physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act; [or] (c) visual forms of harassment, e.g. derogatory posters, cartoons, or drawings . . ." Cal. Code Regs. Tit. 2 § 11019, subd. (b)(1).

To constitute harassment, conduct must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive work environment," and it excludes conduct that is "occasional, isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609 (Cal. Ct. App. 1989) (citations omitted). California law recognizes that "harassment by a high-level manager of any organization may be more injurious to the victim because of the prestige and authority that the manager enjoys." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009).

Significantly, California law distinguishes between discriminatory employment actions and harassment. Under FEHA, is it unlawful for "an employer" to discriminate, but it is unlawful for "an employer . . . *or any other person*" to harass. *See* Cal. Gov. Code. §§ 12941, 12940 (emphasis added). Thus, only an employer—and not individuals—can be held liable for discriminatory employment actions, typically through a claim for employment discrimination. By contrast, an individual employee, in addition to an employer, can be held liable for harassment. How this distinction applies to this case is the issue central to this motion. In *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55 (1996), the court provided a succinct explanation of the distinction, which is worth quoting in full:

> [T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not

11.

harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

*Janken*, 46 Cal. App. 4th at 64-65.

Here, all of the actions that Plaintiff alleges the Individual Defendants engaged in or failed to engage in are properly categorized as management actions, including responding to employee complaints, determining whether to conduct investigations into complaints, calling employees into their office and asking why an employee has overtime, requesting that employees sign documents, declining evaluation and accommodation for disabilities, and making decisions on whether to terminate an employee's employment. These are the kinds of "commonly necessary personnel management actions" that may give rise to a claim against an employer for employment discrimination, but that do not ordinarily give rise to a claim against another employee for harassment.[6]

It is true that managers *may* be individually liable for harassment where their personnel or management decisions "have a secondary effect of communicating a hostile message. This occurs when the actions establish a *widespread* pattern of bias." *Roby*, 47 Cal. 4th at 709 (emphasis added). And, a fact finder may look to both categories of evidence—evidence of the manager's conduct falling outside his or her necessary job duties *and* evidence of the manager's official actions—to determine

---

[6] At the hearing on the motion, Plaintiff indicated that she could amend the complaint and allege that Kirkpatrick witnessed, on at least one occasion, subordinates engaging in behavior that constitutes harassment, but did not participate in the harassment or say anything that would otherwise encourage the harassment. However, as noted by Little Caesars, a supervisory employee is not liable under FEHA for failing to prevent harassment by a subordinate employee, (Dkt. No. 25-1 at 5). *See Fiol v. Doellstedt*, 58 Cal. Rptr. 2d 308, 316 (1996) (concluding "[a] non-harassing supervisor who fails to take action on a sexual harassment complaint by a subordinate has not engaged in personal conduct constituting harassment, but rather has made a personnel management decision which in retrospect may be considered inadequate or improper" and that "[a] supervisor does not aid and abet a harasser by mere inaction"); *accord Zamora v. Sacramento Rendering Co.*, No. CIVS0500789DFLKJM, 2007 WL 137239, at *5 (E.D. Cal. Jan. 17, 2007).

12.

whether an individual manager engaged in harassment. *Id*. at 707; *see also id*. at 709 ("discrimination and harassment claims can overlap as an evidentiary matter" because evidence that a manager took adverse official actions "can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus.").

However, that management actions *can* be harassing or *can* be probative of harassment in some cases does not mean that this is such a case. Stated simply, viewing the complaint in the light most favorable to Plaintiff, the employment actions alleged in the complaint do not plausibly have "a secondary effect of communicating a hostile message." *Roby*, 47 Cal. 4th at 709. They appear to be precisely the routine personnel management activities attributable to the employer.

As the *Janken* court observed, the legislature itself distinguished between FEHA discrimination claims and FEHA harassment claims, both with respect to what conduct constitutes a violation, and with respect to who may be held liable for each claim. It is important that the courts honor this distinction. However, honoring that distinction when the issue is fraudulent joinder presents a challenge: it can be difficult for a court to conclude that a plaintiff has *no possibility* of establishing a harassment claim against a non-diverse individual defendant, even if most of that defendant's allegedly harassing conduct is primarily management activity. By the same token, the law governing when management activity can give rise to a harassment claim makes clear that the management activity must be harassing in some way. The activity alleged in the complaint and at the hearing does not meet this standard. The Court also notes that honoring the discrimination-harassment distinction has important consequences where, as here, it appears that a plaintiff has haled two non-diverse individual defendants into court based on unviable state law claims, simply to secure a state court forum. Threatening an individual with liability that should properly attach

to his employer because it is based on employment-related activity subverts the logic of FEHA. Plaintiffs who engage in such tactics should not be rewarded with their preferred forum.

For the foregoing reasons, Plaintiff has not alleged a claim for harassment under FEHA, nor can she by amending the complaint.

### 3.    IIED Claim (Sixth Cause of Action)

To state a viable claim for IIED against one of the Individual Defendants, Plaintiff must offer factual allegations demonstrating that: (1) the Individual Defendant engaged in extreme and outrageous conduct with the intent to cause (or reckless disregard for the probability of causing) severe emotional distress; (2) Plaintiff suffered extreme or severe emotional distress; and (3) the Individual Defendant's outrageous conduct was the actual and proximate cause of Plaintiff's distress. *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). To constitute "outrageous," conduct the Individual Defendant's conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)). Additionally, the Individual Defendant must have engaged in such conduct "with the realization that injury [would] result." *Id.* (quoting *Davidson*, 32 Cal.3d at 210).

Just as management conduct does not constitute harassment, "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.*

As discussed above, Plaintiff's complaint is premised on personnel management action and does not support a claim for IIED. Because these alleged employment decisions occurred within the context of an employment relationship, any IIED claim based on these actions is barred by the California Workers' Compensation Act's exclusive remedies provision. *See Potter v. Ariz. S. Coach Lines, Inc.*, 202 Cal.

App. 3d 126, 133 (1988).  And, just as the Individual Defendants' actions were not of the quality or quantity to support a claim for harassment, they are also not outrageous or so extreme as to exceed all bounds of that usually tolerated in a civilized community.  Thus, the complaint does not state an IIED claim against the Individual Defendants.

### 4. Negligent Management Claim (Seventh Cause of Action)

Plaintiff sues the Individual Defendants for negligent management, alleging the Individual Defendants breached their duty "to maintain a work environment free of discrimination, harassment, and retaliation, to evaluation Plaintiff for accommodation, and to hire and supervise employees in a manner likely to achieve that end."  (Compl. ¶ 64.)

Workers' compensation law bars negligence claims by employees against their employers. *See Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.,* 14 Cal. App. 4th 1595, 1605-06 (1993) (stating that workers' compensation laws would bar negligent supervision claim by harassed employee). Therefore, Plaintiff's claim for negligent management against the Individual Defendants fails.

### 5. Claim Based on Violations of Business and Professions Code (Eighth Cause of Action)

California's Unfair Competition Law ("UCL"), codified at Business & Professions Code section 17200, *et seq.*, prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  The UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL.  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

To state a claim under the UCL, a plaintiff must first establish standing.  A plaintiff establishes standing under the UCL by alleging that he "has suffered injury in fact and has lost money or property," Cal. Bus. & Prof. Code § 17204, and that the defendant's conduct caused this injury.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th

1583, 1592 (2008). Little Caesars argues Plaintiff has not established standing because she has not shown any economic injury. (Dkt. No. 25-1.) The Court agrees. Plaintiff alleges she "suffered losses" and "seeks disgorgement of any profit gained by Defendants," but it is unclear how any of the Individual Defendants' alleged actions caused Plaintiff economic injury. (Compl. ¶ 73.) Plaintiff's loss of wages cannot be attributed to the Individual Defendants solely because they told her Little Caesars was terminating her employment. Plaintiff's allegations are conclusory, and Plaintiff has provided no facts that suggest Plaintiff could state a viable UCL claim in an amended complaint.

### 6. Fraud/Misrepresentation/Concealment Claim (Ninth Cause of Action)

Plaintiff's ninth cause of action alleges that the Individual Defendants committed fraud by intentional misrepresentation by "promis[ing] Plaintiff her employment would continue and that she would be allowed to work regardless of her age, disability, or perceived disability, and she would be evaluated for accommodation." (Compl. ¶ 76.) Plaintiff alleges "[t]his was untrue," "Defendants . . . knew their representations were false" and "Plaintiff relied on Defendants' . . . promises to her detriment as Defendants . . . failed to keep their promises. (Compl. ¶¶ 76-77.)

To state a claim for fraud, a plaintiff must allege (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. *Serv. by Medallion Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996). Fraud must be pled with specificity; general and conclusory allegations will not suffice. *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996). A plaintiff must plead facts that show "how, when, where, to whom, and by what means" the representations were made. *Id.* Furthermore, "[t]he requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly

16.

fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

Here, Plaintiff's fraud claim is insufficiently pled. Plaintiff has failed to plead the identity of the person or persons who made the representations. The complaint also does not clearly plead, for each relevant representation, whether it was oral or written. Finally, the complaint fails to plead facts showing justifiable reliance and resulting damages because it does not plead that Plaintiff could have and would have worked elsewhere but for the Individual Defendants alleged misrepresentation. The complaint fails to plead with sufficient specificity the facts *showing* reliance and damages.

Where a complaint includes causes of action sounding in fraud, including claims for negligent misrepresentation and concealment, those allegations must also be pleaded with particularity. Fed. R. Civ. P. 9(b). Plaintiff's allegations are conclusory and, like all of the other claims, Plaintiff has not and cannot plead sufficient facts to support her claim based on fraud, negligent misrepresentation, and concealment.

### C. The Amount in Controversy Requirement Is Met

The Court must decide whether Little Caesars has demonstrated that the amount in controversy exceeds $75,000.[7] Plaintiff's complaint seeks damages for wages and employment benefits, incidental expenses, emotional distress, attorneys' fees, prejudgment interest, and punitive damages, but does not specify the amounts sought. (*See* Compl. ¶¶ 29, 43-45, 52, 59-60, 69, 74, 91-92, 100-01.) The Court finds Little Caesars has satisfied its burden of plausibly alleging an amount in controversy

---

[7] In Little Caesars's opposition to the motion to remand, defense counsel proposed that they would stipulate to the remand if Plaintiff would stipulate to damages less than $75,000. (Dkt. No. 35 at 1 n.1.) Plaintiff did not address this proposal in her reply motion. (*See* Dkt. No. 36.)

exceeding $75,000 in their Notice of Removal.[8]  Accordingly, the Court must weigh the evidence and determine whether Defendants have met their burden, by a preponderance of the evidence, that the jurisdictional amount in controversy is satisfied.

### 1.    Lost Wages and Employment Benefits

Little Caesars asserts that lost wages should be based on the length of time from termination through the estimated date of trial.  (Removal at 8.)  The weight of authority, however, requires the Court to ascertain jurisdiction at the *time of removal*. *Fortescue v. Ecolab Inc.*, 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014) ("[I]n determining the amount in controversy, the court declines to project lost wages forward to some hypothetical trial date."); *Soto v. Kroger Co.*, 2013 WL 3071267, *3 (C.D. Cal. 2013) ("[T]he guiding principle is to measure amount in controversy at the time of removal."); *Haase v. Aerodynamics Inc.*, No. 2:09-CV-01751-MCE-GG, 2009 WL 3368519, *4 (E.D. Cal. 2009) ("The amount in controversy must be determined at the time of removal."); *see Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90, (1938)) ("[J]urisdiction depends on the state of affairs when the case begins; what happens later is irrelevant."); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) (limiting amount of lost wages considered in amount in controversy to those accrued at time of removal).

In support of their Notice of Removal, Little Caesars submitted the declaration of Human Resources Director Rebecca Adkins, in which she declared that on the date of Plaintiff's termination, Plaintiff's hourly rate was $10.00 per hour, she worked approximately forty hours per week, and her weekly earnings amounted to $400 per week. (Dkt. No. 5 ¶¶ 1, 4.)  Plaintiff was terminated on June 2, 2016, and Defendants

---

[8] In the motion to remand, Plaintiff argues "Defendant has provided no such evidence in support of its [Notice of Removal], and merely speculates as to Plaintiff's damages." (Mot. to Remand at 18.)

filed their Notice of Removal on September 12, 2018—a period of 118 weeks and six days. (Compl. ¶¶ 13; Dkt. No. 1.) Therefore, based on Plaintiff's $400 weekly earnings, her lost wages at the time of removal were at least $47,200 ($400 per week x 118 weeks).

Additionally, while the Court declines to quantify the exact value of Plaintiff's "other employment benefits," they are more likely than not to be more than nominal. *See Melendez v. HMS Host Family Rests., Inc.,* No. CV 11-3842 ODW CWX, 2011 WL 3760058, at *3 (C.D. Cal. Aug. 25, 2011) (the Court may also include other benefits in the lost wages analysis). In other words, they are worth at least $1. Accordingly, the total amount of Plaintiff's lost wages claim, for purposes of jurisdiction, is at least $47,201.

## 2. Attorneys' Fees

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). While there is a split of authority about whether post-removal attorneys' fees should be included in the amount in controversy, recent cases in this district hold that post-removal attorneys' fees should be included. *See, e.g., Guytan v. Swift Transp. Co. of Arizona, LLC*, No. 17-cv-00626-VAP (DTBx), 2017 WL 2380159, at *3 (C.D. Cal. June 1, 2017). This Court has determined that "'an appropriate and conservative estimate' for attorneys' fees in employment cases in this district 'may reasonably be expected to equal at least $30,000.'" *Id.* (citing *Sasso*, 2015 WL 898468, at *6); *see also Ponce v. Med. Eyeglass Ctr., Inc.*, No. 2:15-cv-04035-CAS (JEMx), 2015 WL 4554336, at *4 (C.D. Cal. July 27, 2015) (estimating $30,000 of attorneys' fees in an employment case); *Aguilar*, 2015 WL 6755199, at *7 (same).

Plaintiff requests attorneys' fees, which may be granted to the prevailing party in FEHA lawsuits. Cal. Gov't Code § 12965. Because the Court assumes at this stage that Plaintiff will prevail on her claims, attorneys' fees should be included in the

19.

1   amount in controversy. The Court therefore adheres to the decisions in other

2   employment cases in this district and includes $30,000[9] of attorneys' fees in the

3   amount in controversy.

### 3. Emotional Distress and Punitive Damages

5       Plaintiff's complaint seeks unspecified damages for emotional distress. (*See*

6   *generally* Compl.) Emotional distress damages are properly considered in the amount

7   in controversy for jurisdiction purposes. *See, e.g., Kroske*, 432 F.3d at 980; *Cain v.*

8   *Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); *see also*

9   *Simmons*, 209 F. Supp. 2d at 1034 ("In fact, emotional distress damages may be

10  considered when calculating the amount in controversy even where not clearly pled in

11  the complaint."). "To establish the amount of emotional distress in controversy, a

12  defendant may introduce evidence of jury verdicts in other cases." *Cain*, 890 F. Supp.

13  2d at 1250 (C.D. Cal. 2012) (citing *Rivera v. Costco Wholesale Corp.*, No. C 08-

14  02202 CW, 2008 WL 2740399, at *1 (N.D. Cal. July 11, 2008)). Little Caesars cites

15  several jury verdicts awarding emotional distress damages in other employment

16  discrimination and failure to accommodate cases, where emotional distress damages

17  ranged from $500,000 to $2.5 million. (*See* Dkt. No. 35 at 9.)

18      Plaintiff also seeks an unspecified amount in punitive damages. "It is well

19  established that punitive damages are part of the amount in controversy" for purposes

20  of establishing diversity jurisdiction. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945

21  (9th Cir. 2001); *see Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S.

22  238, 240 (1943). In order to establish probable punitive damages, a party asserting

23  federal diversity jurisdiction may also introduce evidence of jury verdicts in cases

24  involving analogous facts." *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d

25  1227, 1232 (N.D. Cal. 2000). Defendants also cites jury verdicts awarding punitive

26  damages from several other cases. (*See* Dkt. No. 35 at 9.)

---

[9] The Court finds $30,000 is a conservative estimate for attorneys' fees in this case given that Plaintiff's counsel charges $450 per hour. (*See* Dkt. No. 34-1.)

Without deciding whether this case is sufficiently analogous to those cited by Little Caesars, or quantifying the exact value of Plaintiff's claims for emotional distress or punitive damages, the Court recognizes that emotional distress and punitive damages are more likely than not to be more than nominal. *See Hurd v. Am. Income Life Ins.*, No. CV-13-05205 RSWL-MRW, 2013 WL 5575073, at *7 (C.D. Cal. Oct. 10, 2013) ("Punitive damages and emotional distress damages in disability discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum."). In other words, they are likely worth at least $1 each.

### 4. Aggregation of Claims

The amount in controversy, for purposes of jurisdiction, is the total "amount at stake in the underlying litigation." *Theis*, 400 F.3d at 662. As stated above, the Court finds that there is at least $47,201 in lost wages, $30,000 in attorneys' fees, $1 in emotional distress, and $1 in punitive damages at stake. Accordingly, the Court is persuaded that Little Caesars has established by a preponderance of the evidence that, when viewed in combination, Plaintiff's claims exceed $75,000, exclusive of interest and costs.

### D. The Individual Defendants Did Not Have to Join in the Removal

Plaintiff also argues that removal is precluded because all defendants must join in removal and the failure of the Individual Defendants to join in the notice precludes removal. (Mot. to Remand at 5); *see Hewitt v. City of Stanton,* 798 F.2d 1230, 1232-1233 (9th Cir. 1986). However, the Ninth Circuit has interpreted this "rule" of joinder to not apply when the defendants who do not join in the removal have not been served in the state action. *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) ("Our circuit rule is that a party not served need not be joined."). The Court lacks jurisdiction over a defendant if the defendant has not been properly served. *See Dodco, Inc. v. Am. Bonding Co.*, 7 F.3d 1387, 1388.

In determining the validity of service made prior to removal, the Court must apply the law of the state under which service was made.[10] *See Allen v. Ferguson*, 791 F.2d 611, 616 (7th Cir. 1986). Pursuant to California law, service on an individual may be effectuated by: "(1) personal delivery of the summons and complaint to the individual to be served or to an authorized agent; (2) leaving a copy of the summons and complaint with a responsible person at the individual's home, office, or mailing address and thereafter mailing a copy to the individual at such home, office, or mailing address [i.e., substituted service], or (3) mailing a copy to the individual with a notice and acknowledgment." *Littlejohn v. Denno*, 9 F.3d 1552 (9th Cir. 1993) (citing Cal. Code Civ. P. §§ 415.10, 415.20, 415.30, & 416.90).

Here, Gary Swanberg from One Legal made three attempts to serve each Individual Defendant. (Dkt. No. 15-1; Rodriguez Decl., Ex. A; Dkt No. 17-1, Rodriguez Decl, Ex. A.) In his Declarations of Due Diligence, Swanberg notes that he tried to serve Kirkpatrick three times (on August 4, 2018, August 6, 2018, and August 9, 2018) and Rodriguez three times (on August 5, 6, and 9) at Little Caesars store located in Corona, California. (*Id.*) The declarations further note that various Little Caesars's employees told Swanberg that Kirkpatrick and Rodriguez did not work at that location. (*Id.*) Swanberg did not attempt to serve Kirkpatrick or Rodriguez at their residences, nor is there any indication that Plaintiff attempted to determine their home addresses. (Dkt. No. 16-1, Rodriguez Decl. ¶ 3; Dkt. No. 17-1, Rodriguez Decl. ¶ 3.) It appears Swanberg left copies of the complaints and summonses with Brittney Jones, the manager of Little Caesars in Corona where Kirkpatrick and Rodriguez are no longer employed. (Dkt. No. 16-1, Rodriguez Decl. ¶ 5; Dkt. No. 17-1, Rodriguez Decl. ¶ 5.) Little Caesars asserts Rodriguez has not worked for Little Caesars for more than two years. (Dkt. No. 17 at 1.) Little Caesars further alleges "Plaintiff has made no further attempts to provide [the Individual Defendants] with the

---

[10] Service after removal is governed by federal law.

summons[es] and complaint[s]." (Dkt. No. 16-1, Rodriguez Decl. ¶ 6; Dkt. No. 17-1, Rodriguez Decl. ¶ 6.)

The Individual Defendants were not personally served and Brittney Jones is not authorized to receive service on their behalf. Substituted service does not apply because Little Caesars in Coronado is not the Individual Defendants' "home, office, or mailing address." The Court is troubled by the fact that neither party has presented any evidence suggesting the Individual Defendants have actual notice of this lawsuit.

The Court therefore finds that, in addition to being sham defendants, the Individual Defendants were not properly served. Because the Individual Defendants were not properly served by the date of removal (and have yet to be properly served), the non-joinder of the Individual Defendants in the removal notice is irrelevant.

## V.    CONCLUSION

The Court (1) **DENIES** Plaintiff's Motion to Remand and Plaintiff's request for attorneys' fees; (2) **GRANTS** Little Caesars's Motion to Dismiss the Individual Defendants and dismisses the Individual Defendants **WITH PREJUDICE**; (3) **DENIES** Little Caesars's Motion to Quash for Insufficient Service of Summons on Individual Defendant Amanda Kirkpatrick as moot; and (4) **DENIES** Little Caesars's Motion to Quash for Insufficient Service of Summons on Individual Defendant Ruby Rodriguez as moot.

**IT IS SO ORDERED.**

Dated: November 02, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

23.